Approved: _____
         DANIEL H. WOLF / Jacob R. Fiddelman / Daniel G. Nessim
         Assistant United States Attorneys

Before:  HONORABLE KEVIN NATHANIEL FOX
         United States Magistrate Judge
         Southern District of New York

------------------------------------x
                                    :
UNITED STATES OF AMERICA            :    COMPLAINT
                                    :
        - v. -                      :    Violations of 21 U.S.C.
                                    :    § 846; 18 U.S.C. §§
HECTOR TOLENTINO, and               :    924(c) 1)(A)(i) and 2
ERICKSON HERNANDEZ ALMONTE,         :
     a/k/a " Melo,"                 :    COUNTY OF OFFENSE:
                                    :    BRONX
             Defendants.            :
                                    :
------------------------------------x

STATE OF NEW YORK             ) ss:
SOUTHERN DISTRICT OF NEW YORK )

     STEPHANIE R. RAMIREZ, being duly sworn, deposes and says
that she is a Special Agent with the Drug Enforcement
Administration ("DEA"), and charges as follows:

## COUNT ONE
### (Narcotics Conspiracy)

     1.   In or about December 2019, in the Southern District of
New York and elsewhere, HECTOR TOLENTINO and ERICKSON HERNANDEZ
ALMONTE, a/k/a "Melo," the defendants, and others known and
unknown, intentionally and knowingly did combine, conspire,
confederate and agree, together and with each other, to violate
the narcotics laws of the United States.

     2.   It was a part and object of the conspiracy that HECTOR
TOLENTINO and ERICKSON HERNANDEZ ALMONTE, a/k/a "Melo," the
defendants, and others known and unknown, would and did
distribute and possess with the intent to distribute controlled
substances, in violation of Title 21, United States Code,
Section 841(a)(1).

1

3. The controlled substances that HECTOR TOLENTINO and ERICKSON HERNANDEZ ALMONTE, a/k/a "Melo," the defendants, conspired to distribute and possess with intent to distribute were:

a. 1 kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A);

b. 5 kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A);

c. 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A); and

d. Mixtures and substances containing a detectable amount of oxycodone, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

## COUNT TWO
### (Firearms Offense)

4. In or about December 2019, in the Southern District of New York and elsewhere, HECTOR TOLENTINO and ERICKSON HERNANDEZ ALMONTE, a/k/a "Melo," the defendants, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the narcotics conspiracy charged in Count One of this Complaint, knowingly did use and carry a firearm, and, in furtherance of such crime, did possess a firearm.

(Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.)

The bases for my knowledge of the foregoing charges are, in part, as follows:

5. I am a Special Agent with the DEA and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not

2

include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Background

6. Based on my conversations with other law enforcement agents, and my personal participation in this investigation, I have learned, among other things, that the DEA has been investigating a drug trafficking organization that operates in New York City, among other places (the "DTO"), and that the DTO traffics various types of narcotics from Mexico to the New York City region.

7. Based on my participation in this investigation, including my review of law enforcement records and reports, including surveillance footage of a particular apartment unit ("Apartment-1") located in a multi-story apartment building ("Building-1") in Queens, New York, my conversations with other law enforcement officers and witnesses, and my training and experience, I have learned the following, in substance and in part:

a. Apartment-1 is located on the seventh floor of Building-1. There is a trash room on the seventh floor next to the elevator where, based on my training, experience, and participation in this investigation, residents of the seventh floor of Building-1 generally deposit their trash.

b. By at least on or about December 7, 2019, law enforcement agents had reviewed pictures of HECTOR TOLENTINO and ERICKSON HERNANDEZ ALMONTE, a/k/a "Melo," the defendants, maintained in a law enforcement database, and identified individuals matching their appearance entering and exiting Apartment-1 on several occasions.

### December 17-18, 2019

8. Based on my participation in this investigation, including my review of law enforcement records and reports, and surveillance footage of Apartment-1 and Building-1, my conversations with other law enforcement officers and witnesses, and my training and experience, I have learned the following, in substance and in part:

3

a.     On or about December 17, 2019, at approximately 3:08 p.m., ERICKSON HERNANDEZ ALMONTE, a/k/a "Melo," the defendant, and an unknown individual ("FNU LNU"), entered Apartment-1 with a suitcase ("Suitcase-1").

b.     At approximately 4:20 p.m., ALMONTE and HECTOR TOLENTINO, the defendant, and FNU LNU exited Apartment-1 with what appeared to be Suitcase-1.  Based on the foregoing, and my training and experience, I believe TOLENTINO was already in Apartment-1 when ALMONTE and FNU LNU arrived.

c.     At approximately 9:41 p.m., TOLENTINO, ALMONTE, and FNU LNU returned to Apartment-1 with a yellow plastic bag, similar in size to a grocery bag, that appeared to contain a weighted object inside.

d.     On or about December 18, 2019, at approximately 12:45 a.m., TOLENTINO, ALMONTE, and FNU LNU left Apartment-1 with a weighted, large black garbage bag ("Bag-1") and entered Building-1's elevator with that bag.  TOLENTINO, ALMONTE, and FNU LNU did not drop off Garbage Bag-1 in the seventh floor's garbage room.

e.     Minutes later, TOLENTINO, ALMONTE, and FNU LNU exited Building-1, at which point they were surveilled still with Garbage Bag-1 and discarding it next to a tree between Building-1 and the street.  TOLENTINO, ALMONTE, and FNU LNU then entered vehicles and drove away from Building-1.

f.     At approximately 1:00 a.m., other law enforcement agents and I searched Bag-1 and found within it the following items, among others: gloves; masks; plastic wrappers that, based on my training and experience, I believe are used for packaging kilogram-sized packages of narcotics; and powdery substances that, based on my training and experience, I believe are used to cut with narcotics.  In addition, based on my training and experience, I believed Bag-1 to emit an odor associated with cocaine.

9.     Based on my participation in this investigation, including my review of law enforcement records and reports, and surveillance footage of Apartment-1 and Building-1, my conversations with other law enforcement officers and witnesses, and my training and experience, I have learned the following, in substance and in part:

4

a.    On or about December 18, 2019, at approximately 2:15 a.m., ERICKSON HERNANDEZ ALMONTE, a/k/a "Melo," the defendant, returned by automobile to the vicinity of Building-1.

b.    After parking his car, ALMONTE approached Building-1 on foot.  A law enforcement agent ("Agent-1") then stopped ALMONTE and requested ALMONTE present an identification card.  ALMONTE complied and provided the law enforcement officer with a government-issued identification card.  ALMONTE also stated, in substance and in part, that he resided at Apartment-1.

c.    After ALMONTE's identification was confirmed, Agent-1 handcuffed ALMONTE and Agent-1 and other law enforcement agents accompanied ALMONTE into the vestibule of Building-1, where the law enforcement agents informed ALMONTE they had been surveilling him and that they had searched Bag-1 after it was left outside.

d.    ALMONTE then orally consented to a search of Apartment-1 and accompanied law enforcement agents to Apartment-1.

e.    Inside Apartment-1, ALMONTE identified a locked door to a particular bedroom ("Bedroom-1") where he resided. ALMONTE then unlocked the door and the law enforcement agents conducted a search of Bedroom-1 and found the following items, among others:

          i.    A Glock 27 .9 millimeter handgun;

          ii.    A Springfield Armory XD-40 handgun;

          iii.    Substances weighed and determined to be approximately 2.8 kilograms, and field tested positive for the presence of cocaine;

          iv.    Substances weighed and determined to be approximately 894.9 grams, and field tested positive for the presence of heroin;

          v.    A substance weighed and determined to be approximately 205.6 grams and that appeared, based on my training and experience, to be fentanyl; and

        vi.     A bag of pills weighed and determined to be approximately 455.5 grams, and that appeared, based on my training and experience, to contain oxycodone;

      f.     In the living room of Apartment-1, the law enforcement agents found the following items, among others:

        i.     A Taurus .357 millimeter revolver;

        ii.     A hydraulic press that, based on my training and experience, I believe was used to package narcotics for distribution;

        iii.     An electronic money counter;

        iv.     A device for wrapping objects with vacuum-sealed plastic;

        v.     A scale; and

        vi.     Masks.

    10.    Based on the facts set forth above, and my training and experience, and my participation in this investigation, I believe that Apartment-1 was used by HECTOR TOLENTINO and ERICKSON HERNANDEZ ALMONTE, a/k/a "Melo," the defendants, and others known and unknown, as a "stash house" where they maintained and packaged narcotics for distribution.

<u>Post-Arrest Statements</u>

    11.    Based on my participation in this investigation, including my review of law enforcement records and reports, my conversations with other law enforcement officers and witnesses, and my training and experience, I have learned the following, in substance and in part:

      a.     On or about December 18, 2019, HECTOR TOLENTINO and ERICKSON HERNANDEZ ALMONTE, a/k/a "Melo," the defendants, were arrested in connection with the events described above.

      b.     Following their respective arrests, TOLENTINO and ALMONTE waived their *Miranda* rights.

      c.     TOLENTINO stated, in substance and in part, that:

                  i.          Apartment-1 is used to maintain heroin, cocaine, fentanyl, and firearms;

                  ii.        On or about December 17, 2019, TOLENTINO traveled from Queens, New York to New Jersey, where TOLENTINO obtained 24 kilograms of substances he understood to be heroin, cocaine, and fentanyl, and then returned with such substances to Queens. Based on my training, experience, and participation in this investigation, I know that traveling between Queens and New Jersey necessarily involves traveling through the Southern District of New York.

                  d.     ALMONTE stated, in substance and in part, that he had been living in Bedroom-1 in Apartment-1 for several months and, during that time, TOLENTINO had brought narcotics into Apartment-1 on several occasions in a suitcase.

    WHEREFORE, I respectfully request that HECTOR TOLENTINO and ERICKSON HERNANDEZ ALMONTE, a/k/a "Melo," the defendants, be imprisoned, or bailed, as the case may be.

                                    _____

                                  STEPHANIE R. RAMIREZ
                                  Special Agent
                                  DEA

Sworn to before me this
18th day of December, 2019

_____
HONORABLE KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK